UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Brenda Taite,

        Plaintiff,

v.

Bridgewater State University,
Board of Trustees, and Erin
DeBobes,

        Defendants.

No. 16-CV-10221-PBS

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO
DISMISS (Dkt. No. 19)**

February 17, 2017

CABELL, U.S.M.J.

    Brenda Taite ("the plaintiff") interviewed for a position
with Bridgewater State University ("Bridgewater") but was passed
over in favor of an applicant who reportedly was less qualified.
Proceeding *pro se,* the plaintiff alleges age and race
discrimination and has brought a six-count complaint against
Bridgewater and one of its administrators, Erin DeBobes
("DeBobes") (collectively "the defendants"). The defendants have
moved to dismiss the complaint; the plaintiff opposes the motion.
(Dkt. Nos. 19, 21). For the reasons discussed below, I recommend
that the motion to dismiss be allowed.

## I.   RELEVANT BACKGROUND

### A. <u>The Job Interview</u>[1]

On or about March 30, 2015, the plaintiff applied for the position of Staff Associate, Equal Opportunity/Title IX Investigator with Bridgewater State University. (Compl. ¶ 6). The qualifications for the position included an undergraduate or graduate degree in a relevant discipline, and a minimum of three years of experience in complaint, incident, and/or grievance investigation and resolution. (Compl. ¶ 7). A Juris Doctorate or advanced degree was preferred, as was experience in a higher education setting. (Compl. ¶ 7). The plaintiff satisfied these requirements; she has a Bachelor of Arts degree, a Master of Science degree, and a Juris Doctorate. She also at the time had over seven years of experience investigating complaints and allegations of violations of Title IX and other federal programs. She also had over eight years of experience working in higher education settings, including in particular several years in the field of equal employment opportunity. (Compl. ¶ 8).

On or about April 7, 2015, Bridgewater briefly interviewed the plaintiff by telephone. Following the interview Bridgewater invited the plaintiff to come to the campus for an in-person interview. That interview took place on May 7, 2015. Conducted

---

[1] The facts are taken from the plaintiff's amended complaint (unless otherwise noted) and accepted as true for purposes of the motion to dismiss. (Dkt. No. 26); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

in segments, the plaintiff presented a writing sample, gave a presentation on national origin discrimination, and participated in a mock investigation interview. (Compl. ¶¶ 9-10). Following the interview, DeBobes told the plaintiff that she would hear from them in two weeks. In or around the middle of June 2015, Bridgewater's Human Resources Office sent the plaintiff a letter informing her that the university had selected someone else for the position. (Compl. ¶ 11).

The plaintiff is African-American and over the age of 50.[2] By contrast, all of the members of the selection committee were Caucasian and under 40. Similarly, the candidate Bridgewater selected for the position was Caucasian and aged 25 or less. Moreover, unlike the plaintiff, the selected applicant did not have relevant work experience and had never before worked in the field of Affirmative Action. (Compl. ¶¶ 10-13).

### B. The Administrative Discrimination Complaint

In June of 2015 the plaintiff filed an administrative charge with the Massachusetts Commission Against Discrimination ("MCAD"). (Compl. ¶ 16). By virtue of a work sharing agreement between the MCAD and the Equal Employment Opportunity Commission (EEOC), the complaint was also filed automatically with the EEOC. (Dkt. No. 21, p. 9).

_____

[2] The complaint is silent regarding the plaintiff's age but her MCAD complaint alleges that she was 51 years of age at the time she filed it in June of 2015.

On January 19, 2016, the plaintiff submitted a form letter to the MCAD requesting that her complaint be withdrawn so that she could bring a "private right of action in civil court." Her letter referred to her complaint by both its respective MCAD and EEOC docket numbers. On January 28, 2016, The MCAD responded in what appears to also be a form letter, to the plaintiff and counsel for Bridgewater, as follows:

Dear Parties:

The Commission has received notice that the Complainant intends to file a civil action in Superior Court in the above-referenced matter. Pursuant to M.G.L. Chapter 151B, §9…, the complaint before the Commission is hereby dismissed without prejudice as to the merits.

Please be advised that pursuant to 804 CMR 1.15(2), the parties are required to serve upon the Commission's General Counsel a copy of any final order obtained in court. In addition, any party filing an appeal of such final order is required to serve a notice of appeal upon the Commission's General Counsel.

Please be advised that the Complainant is barred from subsequently brining a complaint on the same matter before this Commission.

It is undisputed that the plaintiff did not seek or receive a comparable right-to-sue letter from the EEOC. The plaintiff initiated this action by way of complaint, on February 8, 2016, and filed an amended complaint on May 26, 2016. (Dkt. Nos. 1, 26).

## C. **The Amended Complaint**

The amended complaint alleges via its introduction that "Bridgewater State University and Erin DeBobes in her individual and official capacity" refused to hire the plaintiff because of her age and race.[3]

Count I alleges that the defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626e.

Count II alleges that the defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.

Count III alleges that the defendants violated the plaintiff's constitutional right to "make and enforce contracts," in violation of 42 U.S.C. § 1981.

Count IV alleges that the defendants violated the Massachusetts Civil Rights Act ("MCRA").

Count V alleges that the defendants violated 42 U.S.C. § 1983.

Finally, Count VI alleges that the defendants violated the Fourteenth Amendment. The plaintiff does not articulate the underlying conduct, alleging only that she "incorporates the

---

[3] The amended complaint is somewhat unclear as to whether each count is meant to apply to both defendants, and whether DeBobes is being sued in both her official and individual capacities. Giving the *pro se* plaintiff the benefit of the ambiguity, the Court will read the amended complaint as alleging each count against both defendants, and against DeBobes in both her official and individual capacities.

allegations of [the preceding 36 paragraphs] as if fully incorporated set forth [sic] herein."

## II. ANALYSIS

"On a motion to dismiss, the court must view a *pro se* plaintiff's allegations liberally and apply a less stringent standard to a *pro se* pleading than to a complaint drafted by counsel." *Woods v. Covidien LP*, No.15-30094-MGM, 2016 WL 2733102, at *2 (D. Mass. May 10, 2016) citing *Rodi v. Southern New England School of Law*, 389 F.3d 5, 13 (1st Cir. 2004). Nevertheless, "*pro se* plaintiffs must still comply with the applicable procedural and substantive rules of law, and dismissal remains appropriate when the complaint fails to suggest an actionable claim." *Woods v. Covidien LP*, No.15-30094-MGM, 2016 WL 2733102, at *2 (D. Mass. May 10, 2016). Moreover, it bears noting here that the plaintiff has a law degree and some experience as an attorney.

The defendants advance various arguments supporting dismissal, some substantive, some procedural. Among them, they contend that all of the counts against DeBobes should be dismissed pursuant to Fed. R. Civ. P. 12(b)(4) because the plaintiff failed to properly serve her. They also contend that the six claims either fail to state a claim under Fed. R. Civ. P. 12(b)(6), or fail for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The Court considers each argument and the appropriate

legal standard in the context of the counts in which they are raised.

### The Complaint Should be Dismissed Against DeBobes in Her Individual Capacity for Insufficient Process

DeBobes moves to dismiss the entire complaint against her for insufficient process, pursuant to Fed. R. Civ. P. 12(b)(4). She argues that the plaintiff failed to effect proper service because no one served her in hand, or at her home, or through someone authorized to accept service on her behalf. *See* Fed. R. Civ. P. 4(e)(2) ("[A]n individual…may be served by: delivering a copy of the summons and of the complaint to the individual personally [or] by leaving a copy of each at the individual's dwelling or usual place of abode…or delivering a copy of each to an agent authorized by appointment or by law to receive service of process.").

As a point of clarification, the proper vehicle to request dismissal for lack of compliance with Rule 4(e)(2) is Rule 12(b)(5). Rule 12(b)(4) attacks the form of the process, that is, the content of the summons, whereas Rule 12(b)(5) challenges the mode of the delivery of the process, or the lack of delivery of the summons and the complaint. *See* 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed. 2016). In that regard, a return of service generally serves as *prima facie* evidence that service was validly performed. *Blair v. City of Worcester,* 522 F.3d 105, 111 (1st Cir. 2008). The defendant has the initial burden of showing service was

improper, and must be specific in identifying the specific manner in which the plaintiff has failed to satisfy the service provision utilized. *See* 2 Moore's Federal Practice § 12.33[1] (3d ed.2013). Once challenged, the burden shifts to the plaintiff to prove proper service. *Rivera-Lopez v. Municipality of Dorado,* 979 F.2d 885, 887 (1st Cir. 1992).

The docket reflects that a summons was executed as to DeBobes on March 11, 2016. (Dkt. No. 8). The accompanying "Process Receipt and Return" reflects that the U.S. Marshal Service served a copy of the complaint on the "Office of General Counsel" at 131 Summer Street in Bridgewater, MA, which an Internet search of Bridgewater's official site reveals to be at least one official address for the university.[4] (Dkt. No. 8). DeBobes does not articulate how this presumptively valid service fell short of the requirements of Rule 4(e)(2). DeBobes does not argue, for example, that Bridgewater's General Counsel was not authorized to accept service on her behalf, a proposition which does not *a priori* appear to be facially unreasonable. Moreover, as the plaintiff notes in her opposition, the law firm representing Bridgewater's Board of Trustees acknowledged receipt of the summons and complaint, indicated they had referred the materials to the Office of the

---

[4] *See* www.bridgew.edu.

Attorney General as litigation counsel, and even copied DeBobes on the correspondence.

On these facts, and at this juncture, there is no basis to conclude that the plaintiff failed to effect proper service of process on DeBobes in her *official* capacity as a Bridgewater employee. To that extent, then, the defendant's claim of insufficient process fails. However, there is on the same facts no basis to assume that the Office of General Counsel was authorized to accept service for claims brought against DeBobes in her *individual* capacity. *See e.g., Perez-Sanchez v. Public Building Authority,* 531 F.3d 104, 106 (1st Cir. 2008). The plaintiff does not assert such an agency relationship or cite to any authority suggesting that such a relationship may be inferred. Consequently, I find that the plaintiff has not made proper service upon DeBobes in her individual capacity because she did not serve DeBobes in hand or by leaving the summons and complaint at her usual place of abode. *See* Fed. R. Civ. P. 4(e)(2). The complaint therefore should be dismissed against DeBobes to the extent it makes any claims against her in her individual capacity. *See Blair,* 522 F.3d at 112-14 (dismissal is appropriate where service is made on an individual who does not serve as agent for the defendant); *Perez-Sanchez,* 531 F.3d at 106 (upholding dismissal of suits against defendants in their individual capacities where agency's legal services director was authorized

to accept service for defendants in their official capacities but not in their individual capacities).

## **The ADEA Claim is Barred by the Eleventh Amendment**

Count I alleges a violation of the ADEA. The ADEA makes it unlawful for an employer "to fail or refuse to hire … any individual or otherwise discriminate against any individual … because of such individual's age." 29 U.S.C. § 623(a)(1). The defendants argue that Bridgewater is immune from ADEA liability under the Eleventh Amendment, and that the claim therefore fails under Rule 12(b)(1) for lack of subject matter jurisdiction.[5]

On a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction. *O'Toole v. Arlington Trust Co.,* 681 F.2d 94, 98 (1st Cir. 1982). Generally, a court should apply a standard of review "similar to that accorded a dismissal for failure to state a claim" under Rule 12(b)(6). *Menge v. N. Am. Specialty*

---

[5] The defendants argue in a footnote that the ADEA claim also fails because the plaintiff failed to exhaust her administrative remedies by first obtaining a "right to sue letter" from the EEOC. But unlike Title VII, which does require a plaintiff to first obtain a "right to sue letter," "[t]he ADEA… only requires that a Massachusetts claimant *commence* an appropriate grievance before proceeding to federal court." *Johnson v. Walgreen*, 980 F.2d 721, 1992 WL 357828, at *3 (1st Cir. December 7, 1992) (emphasis original). *See also* 29 U.S.C. § 633(b) ("In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated."); 29 U.S.C. § 626(d)(1) ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission.").

*Ins. Co.,* 905 F. Supp. 2d 414, 416 (D.R.I. 2012) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995).  A court confronted with a Rule 12(b)(6) motion "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 66 (1st Cir. 2004) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).  To show that one is entitled to relief, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharmaceuticals, Inc.,* 637 F.3d 1, 5 (1st Cir. 2011)).

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  In practice, this means that unless a state consents to being sued, the "[s]tate is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415

U.S. 651, 662-63 (1974).[6]  The defendants argue, correctly, that the states have not given up their immunity for suits brought under the ADEA.  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 92 (2000) ("[T]he ADEA does not validly abrogate the States' sovereign immunity.").  In so arguing, though, the defendants simply presume that Bridgewater is an arm of the state for these purposes.  Their presumption, while not entirely unfounded, is also not without at least a small amount of risk.  Although the "vast majority of state universities ... have been found to be arms of the State" for purposes of Eleventh Amendment immunity, it does not follow that every state university warrants or enjoys that status.  *Irizarry-Mora v. University of Puerto Rico*, 647 F.3d 9, 14 (1st Cir. 2011) (quoting *Univ. of R.I. v. A.W. Chesterton Co.,* 2 F.3d 1200, 1204 (1st Cir.1993)) (alteration marks original).  Rather, each state university "must be evaluated in light of its unique characteristics."  *Id.; United States v. University of Massachusetts, Worcester*, 812 F.3d 35, 40 (1st Cir. 2016) (noting

---

[6] The plaintiff misquotes the *Edelman* Court as proclaiming that an unconsenting state "***is not*** immune" from suits brought by citizens.  In fact, the Court stated that an unconsenting State "***is*** immune" from suits brought by citizens.  *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (emphasis added).  The word "not," which completely reverses the thrust of the statement, simply does not appear in the opinion.  Similarly, the plaintiff cites to the Seventh Circuit's decision in *Nanda v. Board of Trustees of University of Illinois*, 303 F.3d 817 (7th Cir. 2002), as supporting the proposition that Congress validly abrogated the States' Eleventh Amendment immunity with respect to ADEA claims.  This assertion is also incorrect.  The court there unambiguously noted that the Supreme Court held that Congress did not abrogate Eleventh Amendment immunity in the ADEA.  *Nanda,* 313 F.3d at 825-826.

that whether a specific university qualifies as an arm of the state is a question of federal law that "can be answered only after considering the provisions of state law that define the agency's character.") (quoting *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 n. 5 (1997)). Accordingly, just as some state universities have been found to be arms of the state for Eleventh Amendment purposes, others have not. *New Gen Screening, Inc. v. New England Newborn Screening Program*, 187 F.3d 24, 27 (1st Cir. 1999) ("A number of decisions have held that individual state universities are arms of the state for Eleventh Amendment purposes, but ... there are cases denying protection"); *see e.g., Irizarry-Mora*, 647 F.3d at 14 (finding University of Puerto Rico to be an arm of the state); *University of Massachusetts, Worcester,* 812 F.3d at 40 (UMass Worcester found to be an arm of the state); *A.W. Chesterton Co.,* 2 F.3d at 1202-17 (University of Rhode Island found not to be an arm of the state); *University System of New Hampshire v. United States Gypsum Co.,* 756 F. Supp. 640, 647 (D.N.H. 1991) (finding University of New Hampshire was sufficiently autonomous to escape designation as an alter ego of the state).

Courts apply a two-part test to determine whether a state university or college should be deemed an arm of the state. *Irizarry-Mora*, 647 F.3d at 12. One first asks if "the state has indicated an intention—either explicitly by statute or implicitly through the structure of the entity—that the entity share the

state's sovereign immunity." *University of Massachusetts, Worcester,* 812 F.3d at 39 quoting *Redondo Constr. Corp. v. P.R. Highway & Transp. Auth.,* 357 F.3d 124, 126 (1st Cir.2004). If the answer is not self-evident, this inquiry may necessitate a broad survey of the entity's relationship with the state, considering such things as "the degree of state control over the entity, the way in which the entity is described and treated by its enabling legislation and other state statutes, how state courts have viewed the entity, the functions performed by the entity, and whether the entity is separately incorporated. *University of Massachusetts, Worcester,* 812 F.3d at 39; *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and Caribbean Cardiovascular Center Corp.,* 322 F.3d 56, 62 n. 5-6, 65 n. 7. If this assessment proves inconclusive, "the court must proceed to the second step and consider whether the state's treasury would be at risk in the event of an adverse judgment." *University of Massachusetts, Worcester,* 812 F.3d at 40; *Redondo Constr.,* 357 F.3d at 126.

In this District, and with respect to Massachusetts state universities and colleges, every court presented with the issue has concluded or assumed without issue that the state university or college at issue was a state agency for purposes of the Eleventh Amendment. *See University of Massachusetts, Worcester*, 812 F.3d at 40 (University of Massachusetts Medical School; noting that "federal district courts in Massachusetts have uniformly

determined that [the University of Massachusetts Medical School] and its affiliated programs are arms of the state"); *University of Massachusetts v. Robl*, No. 04-11013-RGS, 2004 WL 1725418, at *2 (D. Mass. August 2, 2004) (University of Massachusetts); *Shocrylas v. Worcester State College*, No. 06-40278-FDS, 2007 WL 3332818, at *6 (D. Mass. October 29, 2007) (Worcester State College); *see also Cichocki v. Massachusetts Bay Community College,* --- F. Supp. 3d ---, No. 15-10663-JGD, 2016 WL 4194239, at *4 (D. Mass. August 8, 2016) ("[i]t is undisputed that Mass Bay qualifies as a state entity and therefore can assert Eleventh Amendment protection"); *Thomas v. Salem State University Foundation, Inc.,* No. 11-10748-DJC, 2011 WL 5007973, at *7 (D. Mass. October 18, 2011) (assuming Salem State University to be an arm of the state); *Baum Research & Dev. Co. v. Univ. of Mass. Lowell,* 503 F.3d 1367, 1369-70 (Fed. Cir. 2007) (assuming Lowell campus of UMass to be an arm of the state).

Notably, the court in *Shocrylas* had occasion to apply the two-part test to a university identically situated to Bridgewater for statutory purposes, and concluded following a comprehensive analysis that the university was an arm of the state for Eleventh Amendment purposes. *Shocrylas v. Worcester State College*, No. 06-40278-FDS, 2007 WL 3332818 (D. Mass. October 29, 2007) (applying

test to Worcester State College);[7] *see also* M.G.L. ch. 15A § 5 (grouping Massachusetts public institutions of higher education into three segments, one of which is a "state university segment" including Bridgewater and Worcester State University among others). At least one other court has found another state university within the same statutory "state university segment" group to be an arm of the state for Eleventh Amendment purposes. *See Thomas v. Salem State University Foundation, Inc.,* No. 11-10748-DJC, 2011 WL 5007973, at *7 (D. Mass. October 18, 2011) (Salem State University).

In light of this consistent and compelling precedent, and adopting the sound reasoning of the court's fulsome treatment of the issue in *Shocrylas,* I conclude here that Bridgewater State University is an arm of the state for purposes of the Eleventh Amendment. It follows that Bridgewater is immune from liability for the ADEA claim. *See Kimel*, 528 U.S. at 91-92; *Irizarry-Mora*, 647 F.3d at 14; *Orell v. UMass Memorial Medical Center, Inc.,* 203 F. Supp. 2d 52, 61 (D. Mass. 2002); *Vizcarrondo v. Board of Trustees of University of Puerto Rico,* 139 F. Supp. 2d 198, 202 (D.P.R. 2001).

---

[7] Worcester State College became Worcester State University in 2010 when the Massachusetts legislature voted to grant university status to all Massachusetts state colleges. *See* http://www.worcester.edu/Worcester-State-University-History/#State_University.

And because the Eleventh Amendment bars suits against state officials in their official capacities, DeBobes is immune from suit for the same reasons. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Canales v. Gatzunis,* 979 F. Supp. 2d 164, 172-73 (D. Mass. 2013).[8]

### The Title VII Claim Should be Dismissed for Failure to Exhaust Administrative Remedies

Count II alleges a violation of Title VII. The defendants move to dismiss the claim on the ground that the plaintiff has failed to exhaust her administrative remedies by failing to obtain a right-to-sue letter from the EEOC. The "unexcused failure to exhaust administrative remedies effectively bars the courthouse door" for a Title VII discrimination claim. *Jorge v. Rumsfeld,* 404 F.3d 556, 564 (1st Cir. 2005). "Administrative remedies [can]not be considered to [be] exhausted ... until the EEOC issue[s] ... a right-to-sue letter." *Franceschi v. U.S. Dep't of Veteran Affairs,* 514 F.3d 81, 85 (1st Cir. 2008); *see also Maillet v. TD Bank U.S. Holding Co.,* 981 F. Supp. 2d 97, 99 (D. Mass. 2013) (plaintiff must receive EEOC right-to-sue letter to fulfill Title VII exhaustion); *see also* 42 U.S.C. § 2000e-5(f)(1) ("[i]f a charge filed with the [EEOC] pursuant to subsection (b) of this section

---

[8] As discussed *infra,* the Court concludes that the complaint should be dismissed against DeBobes in her individual capacity for insufficient service of process. Even were service proper, the ADEA claim would fail against her in her individual capacity because there is no individual liability under the ADEA. *See Ventura v. Hanitchak*, 719 F. Supp. 2d 132, 137 (D. Mass. 2010).

is dismissed by the [EEOC], or if within one hundred and eighty days from the filing of such charge … the [EEOC] has not filed a civil action under this section … *the [EEOC] … shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge [] by the person claiming to be aggrieved.")* (emphasis added).

The plaintiff acknowledges that she did not receive a right-to-sue letter from the EEOC. She argues, however, that the letter she received from the MCAD effectively constitutes an EEOC right-to-sue letter because the two agencies have a work sharing agreement, such that a right-to-sue letter from the MCAD should be seen as a right-to-sue letter from the EEOC. But those courts that have considered the issue in this Circuit have either held or assumed that a plaintiff whose complaint is filed with a state agency such as the MCAD, and then shared with the EEOC pursuant to a work sharing agreement, still must obtain a right-to-sue letter from the EEOC in order to bring a Title VII claim. *See Abraham v. Woods Hole Oceanographic Institute,* 553 F.3d 114, 118 (1st Cir. 2009) (where employee's MCAD complaint was forwarded to EEOC pursuant to work sharing agreement between the agencies, employee could bring Title VII claim only after receiving right-to-sue letter from EEOC); *Minahan v. Town of East Longmeadow,* No. 3:12-CV-30203-MAP, 2014 WL 7883586, at *14 (D. Mass. September 11, 2014)

("MCAD's Notice of Dismissal is not a substitute for EEOC's right-to-sue letter"); *Gregory v. YWCA Haverhill, Inc.,* No. 13-11342-FDS, 2014 WL 3798893, at *3 (D. Mass. July 30, 2014) (Title VII requires an aggrieved employee to file a charge with EEOC or MCAD, but obtain a right-to-sue letter from EEOC); *Spencer v. Loux,* No. 11-12338-NMG, 2012 WL 3138632, at *3 (D. Mass. July 27, 2012) (plaintiff who filed MCAD complaint was required to receive right-to-sue letter from EEOC in order to bring Title VII claim); *Okhuereigbe v. Masonelilan Intern., Inc.,* No. 81-476-C, 1981 WL 206, at *1 (D. Mass. June 15, 1981) (where complaint filed with MCAD was forwarded to EEOC, notice of EEOC right-to-sue letter "shows that complainant has exhausted his administrative remedies and, during the ninety day period, confers jurisdiction upon the Court."); *see also Richards v. City of Bangor*, 878 F. Supp. 2d 271, 279 (D. Me. 2012) ("Defendant contend[ed] that the [state agency] Notice is the operative notice, even for purposes of Title VII, because the [state agency] and the EEOC have a worksharing agreement with respect to processing and investigating administrative charges. However, the fact that the [state agency] took no action on Plaintiff's administrative charge would not preclude the EEOC from taking action on it. Therefore, the EEOC notice is the operative notice when it comes to applying the ninety-day limitation provision found in Title VII."); *Skinner v. Salem School Dist*., No. 09-cv-193-JL, 2009 WL 2982798, at *4

(D.N.H. September 8, 2009) (ADA claims dismissed where state agency issued a right-to-sue letter but the record did not indicate whether the EEOC also issued such a letter, "which would have triggered the 90-day time limit for [] filing suit in federal court").

Following these decisions, I conclude that a plaintiff seeking to bring a Title VII claim in federal court must obtain a right-to-sue letter from the EEOC, even if the underlying complaint was filed initially with the MCAD (or equivalent state agency) and then filed with the EEOC under a work sharing agreement, and even if the MCAD has issued its own right-to-sue letter. Because the plaintiff has admittedly failed to obtain a right-to-sue letter from the EEOC, she has failed to exhaust her administrative remedies and the Title VII claim should be dismissed. *See e.g.* *Stevenson v. Amazon.com, Inc.*, No. 15-13505-FDS, 2016 WL 2851316, at *4 (D. Mass. May 13, 2016) (motion to dismiss granted where plaintiff did not appear to have received a right-to-sue letter); *Cloutier v. City of Lowell*, No. 15-12780-FDS, 2015 WL 8751334, at *7 (D. Mass. December 14, 2015) (claims dismissed where plaintiff failed to file a right-to-sue letter); *Gregory v. YWCA Haverhill, Inc.*, No. 13-11342-FDS, 2014 WL 3798893, at *3 (D. Mass. July 30, 2014) (motion to dismiss granted after plaintiff failed to provide evidence of a right-to-sue letter). I recommend, however, that the dismissal be without prejudice, and with leave to refile upon

receipt of a right-to-sue letter from the EEOC. *See Lebron–Rios v. U.S. Marshal Service,* 341 F.3d 7, 14 (1st Cir. 2003) ("[T]his court has repeatedly preferred dismissal without prejudice in analogous circumstances" of failure to exhaust administrative remedies).[9]

### The § 1981 Claim is not Cognizable Against the Defendants

Count III alleges a violation of 42 U.S.C. § 1981. To state a valid 1981 claim, a plaintiff must show (1) that she is a member of a racial minority, (2) that the defendant discriminated against her on the basis of her race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute. *Garrett v. Tandy Corp.*, 295 F.3d 94, 98 (1st Cir. 2002); 42 U.S.C. § 1981 (listing activities to include the right to "make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens…"). The defendants argue that the claim fails because Bridgewater is considered an arm of the state, and section 1981 does not provide for a cause of action against state actors. They argue that the claim instead must be brought pursuant to 42 U.S.C. § 1983, which provides the exclusive remedy for claims against a state actor.

---

[9] Like the ADEA, there is no individual liability under Title VII so the claim would fail against DeBobes in that capacity even assuming service were proper. *Fantini v. Salem State College*, 557 F.3d 22 (1st Cir. 2009).

There is no issue that Bridgewater as a state university is a state actor for purposes of claims brought under section 1981 and section 1983. *See National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 192 (1988) (In the section 1983 context "[a] state university is without question a state actor"); *Alsharif v. Medical University of South Carolina*, No. 2:14-4438-SB, 2016 WL 270913, at *2 (D.S.C. January 22, 2016) (state university is state actor for purposes of section 1981 claim). Similarly, DeBobes as a state agency employee is also deemed to be a state actor. *See Goring v. Board of Sup'rs of Louisiana State University,* 932 F. Supp. 2d 642, 648 (M.D.La. 2010) (governing body of state university is state actor for purposes of 1981); *Westbrook v. City University of New York,* 591 F. Supp. 2d 207, 233 (E.D.N.Y. 2008) (employees of city university were state actors for purposes of 1981 claim).

In *Jett v. Dallas Indep. School Dist.,* the Supreme Court held that § 1981 does not confer a private right of action against state actors, and therefore § 1983 remains the sole remedy for civil rights violations by state actors. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 733 (1989). However, two years after *Jett*, Congress amended the Civil Rights Acts to add subsections (b) and (c). Subsection (c) provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." Civil

Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071. This language raised for some the notion that *Jett* might no longer be good law. In the years since, though, eight of the nine circuit courts of appeals that have addressed the issue directly have concluded that *Jett* remains good law, and that section 1983 provides the sole remedy for civil rights violations by state actors. *See Campbell v. Forest Preserve Dist. of Cook County, Ill.,* 752 F.3d 665, 666 (7th Cir. 2014) (*Jett* remains good law), *Brown v. Sessoms,* 774 F.3d 1016, 1021 (D.C. Cir. 2014) (same), *McCormick v. Miami University*, 693 F.3d 654, 660 (6th Cir. 2012) (same), *McGovern v. City of Philadelphia,* 554 F.3d 114, 115 (3rd Cir. 2009) (same), *Bolden v. City of Topeka, Kan.* 441 F.3d 1129, 1137 (10th Cir. 2006) (same), *Oden v. Otkibbeha County, Miss.,* 246 F.3d 458, 464 (5th Cir. 2001) (same), *Butts v. County of Volusia,* 222 F.3d 891, 894 (11th Cir. 2000) (same), *Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir. 1995); *but see Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1209 (9th Cir. 1996) ("[W]e conclude that the amended 42 U.S.C. § 1981 contains an implied cause of action against state actors, thereby overturning Jett's holding that 42 U.S.C. § 1983 provides the exclusive federal remedy against state actors for the violation of rights under 42 U.S.C. § 1981.").

The First Circuit has apparently not yet addressed the issue directly, and courts within the circuit have not always reached

the same result. *Compare Buntin v. City of Boston,* --- F. Supp. 3d ---, No. 15-10556-RGS, 2016 WL 4975193, at *2-3 (D. Mass. September 16, 2016) (section 1983 "remains the exclusive remedy for civil rights violations by state actors) and *Enwonwu v. Drivers Staffing Inc.,* 881 F. Supp. 2d 238, 240-241 (D. Mass. 2012) ("Because § 1981 confers no private right of action, suits to enforce the federal right created by that statute must be brought pursuant to 42 U.S.C. § 1983") *with Thomas v. Gscheidle*, No. CIV. 98-264-JD, 1999 WL 1059679 (D.N.H. May 26, 1999) (expressing uncertainty as to whether the amendments to section 1981 overruled *Jett*) and *Powell v. City of Pittsfield,* 143 F. Supp. 2d 94, 112 (D. Mass. 2001) ("[T]his court believes[] section 1981 now contains an implied cause of action against state actors."). But, I am persuaded by the nearly unanimous agreement among the circuits, as well as by the reasoning of the court in this District in *Buntin*, that *Jett* remains good law, and that section 1983 remains the exclusive remedy for a party seeking relief for civil rights violations by a state actor. For that reason, the plaintiff's section 1981 claim should be dismissed in favor of the section 1983 claim.

Even were I to conclude inappositely that section 1981 does confer a cause of action against a state actor, I would still recommend that the section 1981 claim be dismissed here because Bridgewater as an arm of the state is shielded from suit by the

Eleventh Amendment. *See Langadinos v. Board of Trustees of University of Massachusetts,* No. 12-11159-GAO, 2013 WL 5507042, at *18 (D. Mass. September 30, 2013) (dismissing 1981 claim on ground that "[t]here is no specific provision abrogating sovereign immunity relative to [plaintiff's] claims of violations of Section 1981"); *Thomas v. Salem State University Foundation, Inc.,* No. 11-10748-DJC, 2011 WL 5007973, at *7 (D. Mass. October 18, 2011) (finding that § 1981 claim against state university "is not cognizable in this Court" because "Massachusetts has not waived, nor has Congress overridden, the state's immunity in regards to a claim under § 1981"); *Ahanotu v. Massachusetts Turnpike Authority,* 466 F. Supp. 2d 378, 398 (D. Mass. 2006) (same).[10]

### The MCRA Claim Fails Because Bridgewater is not a "Person"

Count IV alleges a violation of the Massachusetts Civil Rights Act ("the MCRA"), M.G.L. ch. 12 § 11I. The MCRA "provides for a cause of action against any "person" who interferes by threats, intimidation, or coercion, with the exercise of any rights secured by the constitutions or laws of the United States or of the Commonwealth." *Ali v. University of Massachusetts Medical Center*, 140 F. Supp. 2d 107, 110 (D. Mass. 2011). But it is well established that the Commonwealth of Massachusetts is not a

---

[10] To the extent the § 1981 claim is brought against DeBobes in her individual capacity, it fails because service was insufficient and because the plaintiff has not alleged any acts of discrimination that could reasonably be attributed to DeBobes. Fed. R. Civ. P. 8(a)(2).

"person" for purposes of § 11I of the MCRA.  *Id*.  Bridgewater, as a public state university, is considered an arm of the state in this context and therefore also is not a "person" under the MCRA. *See Id*. ("[University of Massachusetts Medical Center], a part of the University of Massachusetts, is a public institution established under the laws of the Commonwealth of Massachusetts and is therefore an "arm" of the state… not subject to suit under the MCRA.").  The MCRA claim therefore should be dismissed against Bridgewater.

The claim should also be dismissed against DeBobes for failure to state a claim.  To state a claim under the MCRA, a plaintiff must prove that her rights under the Constitution were interfered with, and "that the interference or attempted interference was by 'threats, intimidation or coercion.'"  *Ali*, 140 F. Supp. 2d at 110.  If a complaint fails to allege threats, intimidation or coercion, it will not give rise to an MCRA claim. *See McGunigle v. City of Quincy*, --- F.3d ----, No. 15-2224, 2016 WL 4570420, at *10 (1st Cir. August 31, 2016) citing *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 631 N.E.2d 985, 990 (1994) ("explaining that 'threat' 'involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm;' 'intimidation' 'involves putting in fear for the purpose of compelling or deterring conduct;' and 'coercion' involves 'the application to another of such force, either physical

or moral, as to constrain him to do against his will something he would not otherwise have done'"). In *McGunigle*, the plaintiff alleged that the defendant said "that if McGunigle did not 'watch himself,' he was 'gonna get canned.'" *McGunigle v. City of Quincy*, --- F.3d ----, No. 15-2224, 2016 WL 4570420, at *10 (1st Cir. August 31, 2016). The First Circuit stated that this comment was likely insufficient to sustain a MCRA claim. *Id.* *See also Shabazz v. Cole*, 69 F. Supp. 2d 177, 201-02 (D. Mass. 1999) (using racial slurs, and the "threat" of the loss of at will employment, both fail to state a claim under the MCRA). Here, the complaint does not allege that DeBobes made *any* statement or gesture that could be construed as a threat, intimidation, or coercion. The claim thus fails against both defendants.[11]

## The § 1983 Claim is not Cognizable against the Defendants

Count V alleges a violation of 42 U.S.C. § 1983 against Bridgewater. In order to prevail on a § 1983 claim a plaintiff must bring forth evidence that (1) the defendant acted "under color

---

[11] Without citation to authority, the plaintiff argues that the defendants' counsel, the Attorney General, has a conflict of interest in arguing against application of the MCRA here because the Attorney General is also responsible for enforcing the MCRA. The Court declines to address this undeveloped and logically flawed claim but notes that the Attorney General commonly represents state entities alleged to have violated the MCRA, apparently without issue and without a suggestion that such representation poses an ethical problem. *See e.g., Gaetani v. Hadley,* No. 14-30057-MGM, 2015 WL 113900 (D. Mass. January 8, 2015) (represented Commonwealth and Trial Court of the Commonwealth in suit involving MCRA claims); *Anderson v. Heffernan*, No. 12-12173-FDS, 2013 WL 1629122 (D. Mass. April 9, 2013) (represented Secretary of Mass. Office of Public Safety); *Pina v. Morris*, No. 09-11800-RWZ, 2010 WL 3395302 (D. Mass. August 26, 2010) (represented probation officers); *Ahanotu v. Massachusetts Turnpike Authority*, 466 F. Supp. 2d 378 (D. Mass. 2006) (represented MTA officials).

of state law" and (2) deprived the plaintiff of a federally protected right. *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001); *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir. 2001); *Collins v. Nuzzo*, 244 F.3d 246, 250 (1st Cir. 2001). Here, the plaintiff's claim appears to be based on the equal protection clause of the Fourteenth Amendment. The claim fails, though, for two separate but closely related reasons.

First, section 1983 authorizes suits against "persons" but "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, a state university is not subject to suit under § 1983. *See Nwaubani v. Grossman,* --- F. Supp. 3d ---, No. 13-12552-WGY, 2016 WL 4005614, at *7 (D. Mass. July 26, 2016) ("[i]t is settled beyond peradventure ... that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.") (quoting *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir. 1991)); *see also Wang v. New Hampshire Bd. of Registration in Medicine,* 55 F.3d 698, 701 (1st Cir. 1995) ("neither the state nor its 'alter ego' (state university) is a 'person' for section 1983 purposes, [and] neither is subject to suit under section 1983") (quoting *Kaimowitz v. Board of Trustees, Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir.1991)).

Second, Congress has not abrogated sovereign immunity as a defense to claims under section 1983. As a result, the defendants are immune from suit under section 1983. *See Fantini v. Salem State College*, 557 F.3d 22, 33 (1st Cir. 2009) (1983 claim against state university dismissed because such claims are barred by the Eleventh Amendment, and because a state university is not a "person" under § 1983); *Comfort ex rel. Neumyer v. Lynn School*, 131 F. Supp. 2d 253, 255 (D. Mass. 2001) ("Congress has not abrogated sovereign immunity as a defense to claims under 42 U.S.C. §§ 1981 and 1983").[12]

## The 14th Amendment Claim is not Cognizable

Count VI alleges a violation of the 14th Amendment but it is not clear what the underlying claim is, and how it differs if at all from the plaintiff's section 1981 and 1983 claims. Among other things, the plaintiff does not elaborate on the nature of the claim and merely incorporates by reference all of the preceding paragraphs of the complaint. Treating the claim as alleging a race-based equal protection claim, the claim must be brought under § 1983. *See Eastridge v. Rhode Island College*, 996 F. Supp. 161, 168 (D.R.I. 1998) ("It is clearly established law in the federal

---

[12] Assuming the plaintiff brings this claim against DeBobes in her individual capacity, and assuming service were proper, the claim would still fail because a "[p]laintiff cannot bring a civil rights action under 42 U.S.C. § 1983 against private parties." *Kueter v. Rancourt*, 89 F.3d 823, 1996 WL 343050, at *1 (1st Cir. June 24, 1996).

courts that the 14th amendment does not create a cause of action against state actors.  The 14th amendment creates rights but it does not create a means by which a claim for recovery for violation of those rights can be brought before a federal court.  42 U.S.C. § 1983, on the other hand, establishes no substantive rights itself but it does create a cause of action for deprivation of federal rights committed under color of state law.  It provides the means by which a plaintiff can recover for the violation of his or her federal constitutional rights including those secured by the 14th amendment.").  As such, any race-based equal protection claim is duplicative of the § 1983 claim and should therefore be dismissed.  *See Justiniano v.* Walker, No. 15-cv-11587-NMG, 2016 WL 5339722, at *7 (D. Mass. September 22, 2016) (Count alleging 14th Amendment violation properly subject to dismissal where it was duplicative of separate section 1983 claim).

**III. CONCLUSION**

For the foregoing reasons, it is recommended that the Motion to Dismiss be ALLOWED as to Counts I, III, IV, V, and VI.  As to Count II, the Title VII claim, it is recommended that the Motion to Dismiss be ALLOWED, but without prejudice, and with leave to refile the claim upon receipt of a right-to-sue letter from the EEOC.

The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to

this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.


DATED: February 17, 2017